IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2000

**STATE OF TENNESSEE v. MICHAEL N. GREY**

**Appeal as of Right from the Circuit Court for Dickson County**
**No. CR-3927     Allen W. Wallace, Judge**

---

**No. M1999-01428-CCA-R3-CD - Filed November 9, 2000**

---

The appellant, Michael N. Grey, was convicted by a jury in the Dickson County Circuit Court of two counts of aggravated robbery, a class B felony, and two counts of theft under $500, a class A misdemeanor. The trial court sentenced the appellant to ten years incarceration in the Tennessee Department of Correction for the aggravated robbery convictions. The trial court also sentenced the appellant to eleven months and twenty-nine days incarceration in the Dickson County Jail for the theft convictions. The trial court further ordered that the appellant's sentences be served concurrently. The appellant raises the following issue for review: whether the appellant was denied due process because the State failed to provide him with proper pre-trial exculpatory evidence. Upon review of the record and the parties' briefs, we affirm in part and reverse in part the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed in Part and Reversed in Part.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES, and THOMAS T. WOODALL, JJ., joined.

Michael J. Love, Clarksville, Tennessee, for the appellant, Michael N. Grey.

Paul G. Summers, Attorney General and Reporter, Lucian D. Geise, Assistant Attorney General, Suzanne Lockert, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I. Factual Background

On December 29, 1997, the appellant entered West Meade Market in Dickson County and asked the cashier, Steve Talbert, for a Colt .45 beer. Talbert ascertained from Richard Gregory, who was stocking the cooler, that the store was out of that particular brand of beer. The appellant then chose a Budweiser beer and approached the front counter. Talbert was in the process of

completing the sale when the appellant raised his jacket, partially removed a pistol from his waistband, and told the cashier "to be cool" and turn over the money.

Talbert gave the appellant the three hundred and forty-eight dollars and twenty-five cents ($348.25) that was in the cash register. The appellant then instructed Talbert to get into the cooler. Talbert did so, and told Gregory when he entered the cooler that the market had just been robbed. After remaining in the cooler for approximately 40 seconds, Talbert left the cooler and reported the robbery to the police. Talbert described the robber as being a very light-skinned black male, possibly of mixed race, in his late twenties or early thirties, with a small pencil moustache, standing approximately 5'8" tall, and weighing 145-150 pounds.

A few days later, on January 1, 1998, the appellant entered a ParMart convenience store and requested cigarettes from the cashier, Don Wood. After Wood had gotten cigarettes for the appellant, the appellant told Wood, "Look here." The appellant then lifted his shirt and displayed a pistol that was located in his waistband. The appellant told Wood, "You're going to be shot. This is a robbery." The appellant instructed Wood to put the money from the cash register in a paper bag. Wood complied and gave the appellant sixty-eight dollars ($68). The appellant complained about the amount, but Wood assured him that there was no more money. The appellant ordered Wood to lay down on the floor in the kitchen. After the appellant left the store, Wood called the police. Wood described the robber as being a very light-skinned black male in his early thirties, standing around 5'7" or 5'8" tall, weighing about 150 pounds, having short, dark hair and a moustache, possibly with a mole on either side of his face, and with a possible pierced nose. Additionally, ParMart's surveillance camera had recorded the robbery.

A jury in the Dickson County Circuit Court convicted the appellant of two counts of aggravated robbery, a class B felony, and two counts of theft under $500, a class A misdemeanor. The trial court sentenced the appellant to ten years incarceration in the Tennessee Department of Correction for the aggravated robbery convictions. The trial court also sentenced the appellant to eleven months and twenty-nine days incarceration in the Dickson County Jail for the theft convictions. The trial court further ordered the appellant's sentences to run concurrently. The appellant appeals his convictions and raises the following issue for review: whether the appellant was denied due process because the State failed to provide him with proper pre-trial exculpatory evidence.

## II. Analysis
### A. Brady violation

The appellant claims that he was denied his right to due process when the State failed to disclose a statement Gregory made to the police regarding the description of the robber, which the appellant argues is exculpatory.[1] The United States Supreme Court, in Brady v. Maryland, 373 U.S.

---

[1]The appellant claims that the following written statement given by Richard Gregory to the police was exculpatory and should have been disclosed by the State prior to trial:

-2-

83, 87, 83 S. Ct. 1194,1196-97 (1963), held that the State has a constitutional duty to furnish the accused with exculpatory evidence pertaining to either the accused's guilt or innocence and the potential punishment that may be imposed. Failure to reveal exculpatory evidence violates due process where the evidence is material to either guilt or punishment irrespective of the good faith or bad faith of the prosecution. Id. Furthermore, the prosecution must disclose evidence which may be used by the appellant to impeach a witness. Giglio v. United States, 405 U.S. 150, 154-55, 92 S. Ct. 763, 766 (1972).

All of the following elements must be present before this court can find a Brady violation:
> (1) the appellant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
> (2) the State must have suppressed the information;
> (3) the information must have been favorable to the appellant; and,
> (4) the information must have been material.

State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995); see also State v. Hamlin, No. 01C01-9604-CC-00174, 1999 WL 77853, at *5 (Tenn. Crim. App. at Nashville, February 19, 1999). Moreover, the appellant bears the burden of establishing a Brady violation by a preponderance of the evidence. Id.

We can find no evidence in the record of any discovery request(s) made by the appellant.[2] Accordingly, Brady would apply only if Gregory's statement is obviously exculpatory. State v. Belcher, No. 03C01-9608-CC-00299, 1997 WL 749392, at *7 (Tenn. Crim. App. at Knoxville, November 26, 1997). We conclude that it is not. The description given by Gregory in his statement is substantially similar to the descriptions given by both Wood and Talbert to the police. Moreover, the description does not suggest that the appellant did not commit the crimes of which he is accused. Accordingly, the appellant could have only used Gregory's statement for impeachment purposes.

Additionally, "the prosecution is not required to disclose information that the accused already possesses or is able to obtain...." Workman v. State, 868 S.W.2d at 709. Gregory testified for the defense. The appellant had the opportunity to question him regarding his description of the robber, and could have asked if Gregory had made any statements to the police. This information

---

[1](...continued)

I was filling the beer cooler when [Talbert] and a light skin man came over to the cooler and [Talbert] asked if I had a Colt .45 beer. I saw the back of his head and the side of his face. Then [Talbert] came in the cooler about 2 minutes later and said that he had just been robbed and the robber told him to stay in there for 5 minutes. He was short and thin with short little curly hair, and what looked like a real thin [moustache].

[2] Additionally, the appellant never claims that he made any discovery requests at all; the appellant's only argument is that Gregory's statement is obviously exculpatory and therefore should have been disclosed by the State.

was equally available to both sides.  See State v. Ewing, No. 01C01-9612-CR-00531, 1998 WL 321932, at *9 (Tenn. Crim. App. at Nashville, June 19, 1998).

Furthermore, even if Gregory's statement was exculpatory, it was not material to the appellant's defense.  This court has stated that:

> [t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.

Workman, 868 S.W.2d 705, 710 (Tenn. Crim. App. 1993)(citing United States v. Bagley, 473 U.S. 667, 681-682, 105 S. Ct. 3375, 3383 (1985).

Gregory testified for the defense regarding his description of the robber.  Moreover, the State cross-examined Gregory concerning the contents of the statement and then introduced the statement into evidence. Therefore, because the information contained in the statement was presented to the jury, the materiality test has not been met.  See State v. Hall, No. 01C01-9710-CC-00503, 1999 WL 34782, at *11 (Tenn. Crim. App. at Nashville, January 28, 1999), perm. app. denied, (July 12, 1999)(stating that because the witness testified at trial to essentially the same information that was contained in her statement, the materiality test was not met).  The jury had Gregory's description of the appellant, as well as the descriptions given by Talbert and Wood, and simply chose to credit the testimony of the State's witnesses.  Nothing in the record indicates that the result of the proceeding would have been different.

Furthermore, because the State produced Gregory's statement during their cross-examination of Gregory, this was a delayed disclosure of evidence, not a complete non-disclosure of evidence.  We have previously found that "if there is only a delayed disclosure of information, in contrast to a complete failure to disclose exculpatory information, Brady normally does not apply, unless the delay itself causes prejudice."  State v. Hall,1999 WL 34782, at *9.  Accordingly, a delayed disclosure requires an inquiry into whether the delay prevented the defense from using the disclosed material effectively in preparing and presenting the appellant's case.  State v.Caughron, 855 S.W.2d 526, 548 (Tenn. 1993)(citing United States v. Ingraldi, 793 F.2d 408 (1st Cir. 1986)).

The appellant claims that if he had possessed Gregory's statement prior to trial then he could have used it to impeach Talbert's testimony regarding the description of the robber.  Specifically, the appellant alleges that he could have used the Gregory statement to "pry Talbert's remaining fingers [loose] from his stubborn refusal to admit that [the appellant] did not rob him."  The appellant's argument is misplaced; Gregory's statement could not have been used to impeach Talbert's testimony.  Taylor v. State, No. 01C01-9809-CC-00384, 2000 WL 641148, at *7 (Tenn. Crim. App. at Nashville, May 19, 2000); see also Tenn. R. Evid. 613 (discussing the impeachment of a witness by witness' own prior statement and not the statement of a third party).

Moreover, even if the appellant had possessed Gregory's statement prior to trial, it is unclear how the appellant's cross-examination of Talbert would have differed.  The appellant

questioned Talbert at length regarding his identification of the appellant as the robber. The appellant has failed to show that he was prejudiced by the delayed disclosure of the Gregory statement, particularly in light of the fact that the jury heard Gregory testify to his description of the robber and to his belief that the appellant did not rob the store. This issue is without merit.

### B. Plain Error

Although not raised by the appellant, we find, as plain error, that the appellant's convictions for both aggravated robbery and theft violate the principles of double jeopardy. See Tenn. R. App. P. 36(b), Tenn. R. Evid. 103(d), Tenn. R. Crim. P. 52(b); see also State v. Epps, 989 S.W.2d 742, 745 (Tenn. Crim. App. 1998). Therefore, the appellant's convictions for theft must be reversed and vacated.

The double jeopardy clauses of the United States and Tennessee constitutions protect an accused from: (1) a second prosecution following an acquittal; (2) a second prosecution following conviction; and (3) multiple punishments for the same offense. State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996). The present case involves the third category. In Tennessee, whether two offenses are the 'same' for double jeopardy purposes depends upon a close and careful analysis of the offenses involved, the statutory definitions of the crimes, the legislative intent and the particular facts and circumstances. State v. Black, 524 S.W.2d.913, 919 (Tenn. 1975). This analysis is guided in part by the application of the test announced in Blockburger v. United States:

Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

Black, 524 S.W.2d at 919 (quoting Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182 (1932)). In order to determine if double jeopardy attaches, our supreme court devised a four-part test:

(1) a Blockburger analysis of the statutory offenses;
(2) an analysis, guided by the principles of Duchac, of the evidence used to prove the offenses;
(3) a consideration of whether there were multiple victims or discrete acts; and
(4) a comparison of the purposes of the respective statutes.

Denton, 938 S.W.2d at 381.. However, "if the offenses are the 'same' under Blockburger, the federal constitutional double jeopardy protections have been violated and the inquiry may end." State v. Hayes, 7 S.W.3d 52, 55 (Tenn. Crim. App. 1999). For example, a lesser-included offense does not require proof of an additional fact and is therefore considered to be the same offense as the greater, with double jeopardy barring conviction for both. Id. Furthermore, this court has previously found that, because theft is an element of aggravated robbery, theft is therefore a lesser-included offense of aggravated robbery. Id. at 56. Thus, an individual may not be convicted of both theft and aggravated robbery when the same facts establish the offenses.

The appellant was convicted of aggravated robbery of the West Meade Market and of the theft of $368.25 from West Meade Market. Additionally, the appellant was convicted of the aggravated robbery of the ParMart and of the theft of $68 from the ParMart. The same facts and

circumstances leading to the aggravated robbery convictions were used to sustain the theft convictions. <u>See</u> <u>Epps</u>, 989 S.W.2d at 746.[3] Accordingly, we affirm the convictions for aggravated robbery and reverse both of the appellant's theft convictions.

### III. Conclusion

Based upon the foregoing, we affirm the judgments of the trial court as to the aggravated robbery convictions, but reverse the appellant's theft convictions.

_____
NORMA McGEE OGLE, JUDGE

---

[3] In its brief, the State concedes that the appellant's theft convictions cannot stand because they violate double jeopardy.